|  | IN THE CIRCUIT COURT OF THE 7TH JUDICIAL CIRCUIT IN AND FOR VOLUSIA COUNTY, FLORIDA |
|---|---|
| IN RE.: STONE ISLAND LITIGATION | CLASS REPRESENTATION<br><br>CASE NO.: _____ |

## CLASS ACTION COMPLAINT

Class representative plaintiffs Damian Anson, Debra Bennett and John Bennett, Cheryl Class, Rodney J. Cruise and Cristina Cabanilla, Doreen Daidone and Leonard Daidone, Annette Duke, Drucilla (Dru) Faulk, Timothy Foster and Hana Foster, John Anthony Hohmann and Linda Hohmann, Paul Krasulski, Martin Krasniqi, John (Jack) Lewis, Paula Lewis, Connie R. Lightner and George Lightner, Monika Luedecke and Gary Luedecke, Angela Macaluso, Illeane Pierluissi, Susan Pouzar, Barry F. Sanders and Wally Sanders, Jorge Silva and Maria Silva, Jim Singletary and Elesix Estepa, Trena Sullivan and Flann Waldorf, Paul Tillotson and Marla Tillotson, Roy Walters and Sandra Walters, Judy Warning and Walter (Wally) Warning, Frederick Wilson, and Austin Zakari (collectively, the "Stone Island Homeowners"), on behalf of themselves and all others similarly situated, through undersigned counsel, sue the City of Deltona ("Deltona"), and allege as follows:

**RESERVATION: The Class reserves its right, if necessary, to pursue any federal constitutional claims in federal court arising from the facts alleged herein following the conclusion of these proceedings.**

## Jurisdiction, Venue, and the Parties

1. This class action lawsuit seeks to recover full compensation on behalf of the Stone Island Homeowners and all others similarly situated whose property was used and damaged or destroyed when Deltona opened the Lake Bethel dam shortly after Hurricane Ian (the "Deltona Dam Program").

2. This Court has subject matter jurisdiction over this action pursuant to Section 26.012, Florida Statutes. The amount in controversy for each Stone Island Homeowner exceeds $50,000, exclusive of interest, costs, and attorneys' fees.

3. Venue is proper pursuant to Sections 47.011 and 73.021, Florida Statutes, because the property that is the subject of this lawsuit, and the takings complained of herein, occurred in Volusia County, Florida.

4. Class representative plaintiff Damian Anson owns real property located in Volusia County, Florida, and Damian Anson's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Damian Anson has not received full compensation for the use, and damage or destruction, of his property.

5. Class representative plaintiffs Debra Bennett and John Bennett own real property located in Volusia County, Florida, and Debra Bennett and John Bennett's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Debra Bennett and John Bennett have not received full compensation for the use, and damage or destruction, of their property.

6. Class representative plaintiff Cheryl Class owns real property located in Volusia County, Florida, and Cheryl Class's property was used, and damaged or destroyed, by Deltona as

part of the Deltona Dam Program. Cheryl Class has not received full compensation for the use, and damage or destruction, of her property.

7. Class representative plaintiffs Rodney J. Cruise and Cristina Cabanilla own real property located in Volusia County, Florida, and Rodney J. Cruise and Cristina Cabanilla's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Rodney J. Cruise and Cristina Cabanilla have not received full compensation for the use, and damage or destruction, of their property.

8. Class representative plaintiffs Doreen Daidone and Leonard Daidone own real property located in Volusia County, Florida, and Doreen Daidone and Leonard Daidone's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Doreen Daidone and Leonard Daidone have not received full compensation for the use, and damage or destruction, of their property.

9. Class representative plaintiff Annette Duke owns real property located in Volusia County, Florida, and Annette Duke's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Annette Duke has not received full compensation for the use, and damage or destruction, of her property.

10. Class representative plaintiff Drucilla (Dru) Faulk owns real property located in Volusia County, Florida, and Drucilla (Dru) Faulk's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Drucilla (Dru) Faulk has not received full compensation for the use, and damage or destruction, of her property.

11. Class representative plaintiffs Timothy Foster and Hana Foster own real property located in Volusia County, Florida, and Timothy Foster and Hana Foster's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Timothy Foster and Hana

Foster have not received full compensation for the use, and damage or destruction, of their property.

12. Class representative plaintiffs John Anthony Hohmann and Linda Hohmann own real property located in Volusia County, Florida, and John Anthony Hohmann and Linda Hohmann's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. John Anthony Hohmann and Linda Hohmann have not received full compensation for the use, and damage or destruction, of their property.

13. Class representative plaintiff Paul Krasulski owns real property located in Volusia County, Florida, and Paul Krasulski's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Paul Krasulski has not received full compensation for the use, and damage or destruction, of his property.

14. Class representative plaintiff Martin Krasniqi owns real property located in Volusia County, Florida, and Martin Krasniqi's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Martin Krasniqi has not received full compensation for the use, and damage or destruction, of his property.

15. Class representative plaintiff John (Jack) Lewis owns property located in Volusia County, Florida, and John (Jack) Lewis's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. John (Jack) Lewis has not received full compensation for the use, and damage or destruction, of his property.

16. Class representative plaintiff Paula Lewis owns real property located in Volusia County, Florida, and Paula Lewis's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Paula Lewis has not received full compensation for the use, and damage or destruction, of her property.

CLASS ACTION COMPLAINT
Page 4 of 19

17. Class representative plaintiffs Connie R. Lightner and George Lightner own real property located in Volusia County, Florida, and Connie R. Lightner and George Lightner's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Connie R. Lightner and George Lightner have not received full compensation for the use, and damage or destruction, of their property.

18. Class representative plaintiffs Monika Luedecke and Gary Luedecke own real property located in Volusia County, Florida, and Monika Luedecke and Gary Luedecke's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Monika Luedecke and Gary Luedecke have not received full compensation for the use, and damage or destruction, of their property.

19. Class representative plaintiff Angela Macaluso owns real property located in Volusia County, Florida, and Angela Macaluso's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Angela Macaluso has not received full compensation for the use, and damage or destruction, of her property.

20. Class representative plaintiff Illeane Pierluissi owns real property located in Volusia County, Florida, and Illeane Pierluissi's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Illeane Pierluissi has not received full compensation for the use, and damage or destruction, of her property.

21. Class representative plaintiff Susan Pouzar owns real property located in Volusia County, Florida, and Susan Pouzar's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Susan Pouzar has not received full compensation for the use, and damage or destruction, of her property.

22. Class representative plaintiffs Barry F. Sanders and Wally Sanders own real property located in Volusia County, Florida, and Barry F. Sanders and Wally Sanders's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Barry F. Sanders and Wally Sanders have not received full compensation for the use, and damage or destruction, of their property.

23. Class representative plaintiffs Jorge Silva and Maria Silva own real property located in Volusia County, Florida, and Jorge Silva and Maria Silva's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Jorge Silva and Maria Silva have not received full compensation for the use, and damage or destruction, of their property.

24. Class representative plaintiffs Jim Singletary and Elesix Estepa own real property located in Volusia County, Florida, and Jim Singletary and Elesix Estepa's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Jim Singletary and Elesix Estepa have not received full compensation for the use, and damage or destruction, of their property.

25. Class representative plaintiffs Trena Sullivan and Flann Waldorf own real property located in Volusia County, Florida, and Trena Sullivan and Flann Waldorf's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Trena Sullivan and Flann Waldorf have not received full compensation for the use, and damage or destruction, of their property.

26. Class representative plaintiffs Paul Tillotson and Marla Tillotson own real property located in Volusia County, Florida, and Paul Tillotson and Marla Tillotson's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Paul Tillotson and

Marla Tillotson have not received full compensation for the use, and damage or destruction, of their property.

27. Class representative plaintiffs Roy Walters and Sandra Walters own real property located in Volusia County, Florida, and Roy Walters and Sandra Walters's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Roy Walters and Sandra Walters have not received full compensation for the use, and damage or destruction, of their property.

28. Class representative plaintiffs Judy Warning and Walter (Wally) Warning own real property located in Volusia County, Florida, and Judy Warning and Walter (Wally) Warning's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Judy Warning and Walter (Wally) Warning have not received full compensation for the use, and damage or destruction, of their property.

29. Class representative plaintiff Frederick Wilson owns real property located in Volusia County, Florida, and Frederick Wilson's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Frederick Wilson has not received full compensation for the use, and damage or destruction, of his property.

30. Class representative plaintiff Austin Zakari owns real property located in Volusia County, Florida, and Austin Zakari's property was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. Austin Zakari has not received full compensation for the use, and damage or destruction, of her property.

31. Deltona is a city located in Volusia County, Florida, is responsible for actions under the Deltona Dam Program, and is in all respects *sui juris*.

### Class Action Allegations

32. This lawsuit is brought pursuant to Rule 1.220 (a), Rule 1.220 (b)(1) and Rule 1.220 (b)(3), Florida Rules of Civil Procedure, on behalf of a proposed class defined as follows:

> **All owners of property within Volusia County, including property located in the Stone Island community, whose property was used, and damaged or destroyed, under the Deltona Dam Program, on or after October 1, 2022 (the "Class").**

33. Pursuant to Rule 1.220 (a), the members of the class are so numerous, consisting of hundreds of Volusia County homeowners, that separate joinder is impracticable.

34. Pursuant to Rule 1.220 (a), the Stone Island Homeowners' claims raise questions of law or fact that are common to all members of the Class.

35. Pursuant to Rule 1.220 (a), the Stone Island Homeowners' claims are typical of the claims of Class members and are based on the same legal theories. The Stone Island Homeowners and each member of the Class owned property in Volusia County, and particularly in the Stone Island Community, which was used, and damaged or destroyed, by Deltona as part of the Deltona Dam Program. The Stone Island Homeowners seek to recover full compensation based on the same legal theories applicable to members of the Class.

36. Pursuant to Rule 1.220 (a), the Stone Island Homeowners and their chosen counsel will fairly and adequately protect the interests of the Class. The Stone Island Homeowners are committed to the prosecution of this action, and their counsel are experienced in and capable of prosecuting complex litigation and class actions.

37. Pursuant to Rule 1.220 (b)(1), the prosecution of separate claims or defenses by or against individual members of the Class would create: a risk of varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the Class; and, a risk that adjudications concerning individual members of the Class

would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests. For example, one homeowner may prevail in a claim for inverse condemnation, establishing a taking, but another may not, which may establish precedent regarding any remaining claims, and the class members would be unable to adequately protect their interests on an individual basis.

38. Pursuant to Rule 1.220 (b)(3), questions of law and fact common to all members of the Class predominate over questions affecting individual members of the Class, such that class representation is superior to other available methods for the fair and efficient adjudication of this controversy. Some of the common questions of law and fact which predominate over individual issues include:

    a. Whether Deltona is liable in inverse condemnation for the systematic use, and damage or destruction, of Class members' property;

    b. Whether Class members' property had value at the time it was used, and damaged or destroyed, by Deltona;

    c. Whether the existence of Class members' property on Stone Island represented an imminent danger or public nuisance, or represented any other category that may have permitted Deltona to direct floodwaters to Stone Island, and to used, and damage or destroy, Class members' property;

    d. Whether there exist any superseding or intervening causes that would relieve Deltona of liability for directing floodwaters to Stone Island, and using, and damaging and destroying, Class members' property;

e.  The amount of full compensation to which Class members are entitled for their private property, and the proper measure of such compensation.

**General Factual Allegations**

39.  The following image, retrieved from Google Earth (March 2, 2023), depicts a portion of Volusia County. The Stone Island community is depicted in the center-left portion of this image. Lake Bethel is depicted in the center-right portion of this image. A portion of Deltona is depicted toward the top of the image, and a portion of Lake Monroe is depicted on the left-hand portion of the image.



40.  In or about 1991, Deltona built a drainage system that would drain flood waters from Deltona into the St. Johns River and Lake Monroe.

41.  In the drainage system, water in Deltona drained to Lake Bethel, which is situated to the east of Stone Island.

42.  In or about 2005, as a result of litigation brought by homeowners, including homeowners in Stone Island, a key portion of the drainage system (alternately referred to as a flood control structure or as a dam), was bricked up, closed off, and was no longer used. The purpose of

closing the flood control structure was to avoid routing flood waters from the city to and through, for example, the Stone Island community.

43. In accordance with Deltona's Stormwater and Watershed Management Master Plan, Deltona was aware that opening the flood control structure could result in flooding impact downstream, including for example, the Stone Island community.

44. At least three times between 2005 and 2022, Deltona asked for permission from the St. Johns River Water Management District ("SJRWMD"), to open the flood control structure to drain water from Deltona. For example, Deltona made this request during Tropical Storm Fay (2008), and during Hurricane Irma (2017). Each time, Deltona was denied permission because of the anticipated impact (and damage) opening the flood control structure would have on surrounding areas.

45. Prior to 2022, the Lake Theresa Basin (Lake Doyle) and Lake Bethel drainage systems were stabilized and did not discharge water to, through, or over Stone Island. Certainly, once the flood control structures were permanently closed in or about 2005, the residents of Stone Island relied on this stabilized drainage pattern.

46. Prior to 2022, during the half-century period that many residents of Stone Island have owned homes in that community, the community has never systematically and catastrophically flooded. In addition, the rate of rising and receding floodwaters during prior storms was always such that homeowners had time to prepare, to secure their belongings, and to otherwise get ready for any rising waters.

47. Hurricane Ian made landfall in Florida in September 2022, traveling from southwest Florida, through central Florida, and traveling generally northeast. Hurricane Ian brought heavy rains to the St. Johns River system and to Volusia County.

48. On or about October 1, 2022, in the days after Hurricane Ian, Deltona did not ask for permission to open the flood control structure. Instead, Deltona unilaterally opened the flood control structure as a part of what is referred to above as the "Deltona Dam Program." In so doing, Deltona redirected rising floodwaters from Deltona to, through, and over Stone Island. Deltona did not notify residents of Stone Island of this action. Deltona has never taken responsibility for damage caused by these actions.

49. The opening of the flood control structure resulted in a sudden and catastrophic flow of water from the east into Stone Island. Water flowed, in a concentrated fashion, from the east, across Stone Island Road, into the Stone Island community. That is, waters did not catastrophically rise from Lake Monroe, which would have been the expected path of any rising waters, but flowed from Deltona and Lake Bethel to, through, and over Stone Island.

50. Over the course of less than one day, the waters in Stone Island rose many feet, resulting in catastrophic damage to the community.

51. The opening of the flood control structure ultimately resulted in hundreds of millions of gallons of floodwaters being redirected to, through, and over Stone Island. Floodwaters that would otherwise have drained elsewhere in the system were redirected to, through, and over Stone Island.

52. On or about October 3, 2022, a city engineer, on behalf of Deltona, reported during a city meeting that they opened the flood control structure prior to receiving any approval from SJRWMD. Deltona opined that it was their "right or privilege" to do so to protect its residents. As of October 3, 2022, Deltona was unable to provide an answer to the question of the impact of opening the flood control structure on residents downstream, such as the residents of Stone Island.

53. On or about October 3, 2022, during a city commission meeting, a representative of Deltona stated and asked whether Deltona would rather flood 100 houses or flood 1,000 houses. In other words, would Deltona rather redirect floodwaters to and through Stone Island or leave the floodwaters in Deltona?

54. On or about October 6, 2022, Deltona submitted a request to SJRWMD, as follows:

> Due to the associated rainfall resulting from Hurricane Ian, the City of Deltona requests emergency authorization to open a brick and mortar plug from Lake Doyle 60-inch outfall pipe to allow the Lake Theresa Basin to discharge to Lake Bethel and eventually to Lake Monroe. This request is made in an effort to lower the water levels within the Theresa Basin due to unprecedented flooding conditions caused by Hurricane Ian's associated rainfall, which has caused severe roadway, yard and structural flooding of nearby properties extending from Catalina Boulevard to Doyle Road, in Deltona, Florida.

55. As shown in the Google Earth image above, the Stone Island community sits directly to the west of Lake Bethel. The opening of the referenced flood control structure (and what ended up being three (3) structures) allowed the Lake Theresa Basin (Lake Doyle) to discharge to Lake Bethel, and then directly to the west to, through, and over Stone Island. This caused catastrophic damage.

56. On or about October 13, 2022, SJRWMD issued a permit approving the requested activity. That is, SJRWMD permitted Deltona to open the flood control structure, specifically allowing the Lake Theresa Basin to discharge to Lake Bethel, and then directly to the west to, through, and over Stone Island. The *intention* of the permit application was to direct waters from Deltona to, through, and over the real property which stood in the way of Lake Bethel and Lake Monroe, such as Stone Island.

57. Regardless of any impact of opening the flood control structure on Deltona, and regardless of the SJRWMD permit, Deltona acted in such a manner that directly caused flooding to, through, and over Stone Island.

58. Effectively, Deltona created a floodplain out of the Stone Island community. Deltona did this to confer a public benefit on the people of Deltona.

59. Effectively, Deltona created a drainage easement, causing water to be diverted from Deltona and causing the Lake Theresa Basin (Lake Doyle) to discharge to Lake Bethel, and then directly to the west to, through, and over Stone Island. Deltona did this to confer a public benefit on the people of Deltona.

60. Deltona must compensate the people of Stone Island for this use.

61. The immediate and intense flooding of Stone Island caused severe damage to residents in the Stone Island community including, but not limited to:

   a. Damage to and destruction of structures;

   b. Damage to and destruction of personal property;

   c. Damage to and destruction of landscaping and outdoor property;

   d. Costs of housing and costs of living;

   e. Decreased property valuations.

62. The immediate and intense flooding of Stone Island, and the ensuing volume of water in the community, caused Volusia County to turn off sewer lift/pump stations in Stone Island, resulting in a non-functioning sanitary system, in sewage backing up throughout the community, and resulting in further damage.

63. Through October, November, and December 2022, and up until at least January 2023, Deltona did not close the flood control structures. The flood control structure is apparently open to the whim of Deltona, and the conditions caused by Deltona's opening of the flood control structure may reasonably expected to recur.

64. All conditions precedent to the relief sought herein have been performed, have occurred, or have been waived.

## COUNT I
## INVERSE CONDEMNATION UNDER ARTICLE X. § 6(a), Fla. Const.

65. The Stone Island Homeowners reallege paragraphs 1 through 64 as though fully set forth herein.

66. This is an action for inverse condemnation in accordance with Article X, § 6(a), Fla. Const., arising from Deltona's taking of private property owned by the Stone Island Homeowners and the Class.

67. Specifically, Deltona took a drainage easement, for the diversion of water to, through, and over Stone Island. The taking of an easement, such as a drainage easement, requires just compensation.

68. Deltona is a governmental entity which implemented the Deltona Dam Program for the following public purpose: "[to] lower the water levels within the Theresa Basin due to unprecedented flooding conditions caused by Hurricane Ian's associated rainfall, which has caused severe roadway, yard and structural flooding of nearby properties extending from Catalina Boulevard to Doyle Road, in Deltona, Florida.

69. Deltona's opening of a certain flood control structure (and what ended up being three structures) allowed the Lake Theresa Basin (Lake Doyle) to discharge to Lake Bethel, and then directly to the west to, through, and over Stone Island. This resulted in the use of, and damage and destruction to, property owned by the Stone Island Homeowners and the Class, and constituted a seizure or physical invasion of their property rights.

70. Deltona's drainage easement under the Deltona Dam Program, constituted a substantial interference with the property rights of the Stone Island Homeowners and the Class,

for more than a momentary period, and which resulted in the substantial deprivation of the beneficial use of these property rights.

71.     Deltona's seizure of a drainage easement, to use Stone Island to create a floodplain, resulting in damage to and destruction of property in Stone Island, constitutes a *per se* taking under the Florida Constitution, and is permanent in nature.

72.     *Per se* takings require full and just compensation under Article X, § 6(a), Fla. Const.

WHEREFORE, the Stone Island Homeowners and the Class respectfully request that the Court grant the following relief:

(a)     Entry of an Order finding the actions of Deltona constitute a taking of the Stone Island Homeowners' and the Class' property (in the form of a drainage easement to, through, and over Stone Island);

(b)     Empanelment of a 12-person jury to determine the full compensation due and owing to the Stone Island Homeowners and the Class for the taking of their property;

(c)     Entry of judgment in accord with the order and jury verdict awarding full compensation to the Stone Island Homeowners and the Class for the taking of their property, including pre- and post-judgment interest thereon;

(d)     Entry of an award to the Stone Island Homeowners and the Class for their costs of this lawsuit, for reasonable attorneys' fees pursuant to Sections 73.091 and 73.092, Florida Statutes, and/or other applicable bases for the award of attorneys' fees in class action lawsuits; and,

(e)     Entry of such other and further relief as the Court deems just and proper.

## COUNT II
## INVERSE CONDEMNATION UNDER FIFTH AMENDMENT, U.S. CONST.

73. The Stone Island Homeowners reallege paragraphs 1 through 64 as though fully set forth herein.

74. This is an action for inverse condemnation in accordance with the Fifth Amendment, U.S. Const., applicable to the State of Florida and governmental entities therein through the Fourteenth Amendment, arising from Deltona's taking of private property owned by the Stone Island Homeowners and the Class.

75. Specifically, Deltona took a drainage easement, for the diversion of water to, through, and over Stone Island. The taking of an easement, such as a drainage easement, requires just compensation.

76. Deltona is a governmental entity which implemented the Deltona Dam Program for the following public purpose: "[to] lower the water levels within the Theresa Basin due to unprecedented flooding conditions caused by Hurricane Ian's associated rainfall, which has caused severe roadway, yard and structural flooding of nearby properties extending from Catalina Boulevard to Doyle Road, in Deltona, Florida.

77. Deltona's opening of a certain flood control structure (and what ended up being three structures) allowed the Lake Theresa Basin (Lake Doyle) to discharge to Lake Bethel, and then directly to the west to, through, and over Stone Island. This resulted in the use of, and damage and destruction of, property owned by the Stone Island Homeowners and the Class, and constituted a seizure or physical invasion of their property rights.

78. Deltona's drainage easement under the Deltona Dam Program, constituted a substantial interference with the property rights of the Stone Island Homeowners and the Class,

for more than a momentary period, and which resulted in the substantial deprivation of the beneficial use of these property rights.

79. Deltona's seizure of a drainage easement, to use Stone Island to create a floodplain, resulting in damage to and destruction of property in Stone Island, constitutes a taking under the U.S. Constitution, and is permanent in nature.

80. Takings require full and just compensation under the U.S. Constitution.

WHEREFORE, the Stone Island Homeowners and the Class respectfully request that the Court grant the following relief:

(f) Entry of an Order finding the actions of Deltona constitute a taking of the Stone Island Homeowners' and the Class' property (in the form of a drainage easement to, through, and over Stone Island);

(g) Empanelment of a jury to determine the full compensation due and owing to the Stone Island Homeowners and the Class for the taking of their property;

(h) Entry of judgment in accord with the order and jury verdict awarding full compensation to the Stone Island Homeowners and the Class for the taking of their property, including pre- and post-judgment interest thereon;

(i) Entry of an award to the Stone Island Homeowners and the Class for their costs of this lawsuit and for reasonable attorneys' fees; and,

(j) Entry of such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 17, 2023, a true and correct copy of the foregoing was filed through the Florida Courts E-Filing Portal, with a copy being served electronically to all counsel and interested parties of record.

/s/ *Thomas Allison*
**Thomas C. Allison**
Florida Bar No. 35242
**THOMAS C. ALLISON, P.A.**
5433 S. Bracken Court
Winter Park, FL 32792
Telephone:   (407) 720-7642
Direct:        (407) 378-4198
Facsimile:   (407) 378-7855
Primary:     thomas@allisonpa.com
*Counsel for Class Action Plaintiffs*


/s/ *Andrew Bernard Doyle*
**Andrew Bernard Doyle**
Florida Bar No. 0117369
**SEIBANE DOYLE, PLLC**
913 Mabbette Street
Kissimmee, FL 34741
Telephone:   (407) 906-2777
Primary:     andrew@sd-firm.com
Secondary:  micky@sd-firm.com
*Counsel for Class Action Plaintiffs*