UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAMIAN ANSON, DEBRA BENNETT, JOHN BENNETT, CHERYL CLASS, DOREEN DAIDONE, LEONARD DAIDONE, ANNETTE DUKE, DRUCILLA FAULK, TIMOTHY FOSTER, HANA FOSTER, JOHN ANTHONY HOHMANN, LINDA HOHMANN, PAUL KRASULSKI, MARTIN KRASNIQI, JOHN LEWIS, PAULA LEWIS, CONNIE R. LIGHTNER, GEORGE LIGHTNER, MONIKA LUEDECKE, GARY LUEDECKE, ANGELA MACALUSO, ILLEANE PIERLUISSI, SUSAN POUZAR, BARRY F. SANDERS, WALLY SANDERS, JORGE SILVA, MARIA SILVA, JIM SINGLETARY, ELESIX ESTEPA, TRENA SULLIVAN, FLANN WALDORF, PAUL TILLOTSON, MARLA TILLOTSON, JUDY WARNING, WALTER WARNING, FREDERICK WILSON, AUSTIN ZAKARI, CHARLES BEAMAN, JAYNE BEAMAN, BETHANY TURNER, CURTIS CARLSON, CAROLE COLEMAN, HELEN JEANETTE DEEN, DEBORAH DEEN, DANIEL DEEN, JODEE DEEN, SHARON ROSE GRIFFIN, DARLENE GRIEME, DALE GRIEME, ROGER JENNI, PHILLIP LAPPIES, PAMELA LAPPIES, JOYCE MILLER, MICHAEL O'SULLIVAN, SAMANTHA O'SULLIVAN, JOHN PETRUNIC, SUSAN PETRUNIC, NORMA PHILLIPS, MARIAN SHIRK,

CHRIS STUBBS, NANCY STUBBS,
and SARAH THOMAS,

    Plaintiffs,

v.                                                         Case No: 6:23-cv-766-JSS-LHP

CITY OF DELTONA,

    Defendant.
_____/

## ORDER

Defendant moves for summary judgment. (Dkt. 93; *see* Dkt. 100.) Plaintiffs oppose the motion. (Dkt. 97.) Upon consideration, for the reasons outlined below, the court grants the motion.

## BACKGROUND[1]

Plaintiffs are homeowners in the Stone Island Estates neighborhood in unincorporated Volusia County, Florida, just south of Defendant. (Dkt. 91-1 ¶¶ 1, 8.) Stone Island lies in a wet area: it is located on the northeastern shore of Lake Monroe; it is surrounded by connected waterways, including Lake Monroe, Bethel Creek, and various canals and ditches; and it borders wetlands on multiple sides. (*Id.* ¶¶ 2, 5–7.) Lake Monroe is a natural lake covering 8,771 acres, (*id.* ¶ 3), and Florida's longest river, the St. Johns River, runs to, and through, Lake Monroe, (*id.* ¶ 4). Defendant maintains the Lake Doyle to Lake Bethel Emergency Overflow Interconnect pursuant

---

[1] In setting out the background facts, the court views the evidence in the light most favorable to Plaintiffs as the non-moving parties on summary judgment. *See Underwood v. City of Bessemer*, 11 F.4th 1317, 1327 (11th Cir. 2021). Where possible, the court derives the facts from the parties' joint stipulations (Dkt. 91-1). *See Jimenez v. Dep't of Homeland Sec.*, 119 F.4th 892, 900 (11th Cir. 2024) ("A party . . . may cite to a stipulation to establish that a fact is not disputed.").

to a permit issued by the St. Johns River Water Management District. (*Id.* ¶ 10.) As its name suggests, this interconnect provides an emergency stormwater overflow connection between Lake Doyle and Lake Bethel. (*Id.* ¶ 11.) To divert water using the interconnect, Defendant was required to remove a plug and open a weir—until November 22, 2024, when the water management district removed the plug requirement from the permit conditions. (*See id.* ¶¶ 12, 15, 19–20, 27.)

On September 23 and 24, 2022, Ron DeSantis, Governor of Florida, issued executive orders in advance of Hurricane Ian's September 28 landfall. (*Id.* ¶¶ 16–18.) The September 23 executive order stated that the tropical system posed risks of "dangerous storm surge, heavy rainfall, flash flooding, strong winds, hazardous seas, and the potential for isolated tornadic activity" for parts of Florida and that the threat posed by the system "require[d] that timely precautions [be] taken to protect the communities, critical infrastructure, and general welfare" of the state. (Dkt. 93-3 at 1.) Although this executive order generally referred to the situation presented by the storm as an emergency, the executive order officially declared a state of emergency for specific counties excluding Volusia County. (*Id.* at 1–2.) However, the September 24 executive order broadly declared a state of emergency for Florida given the continuing nature of the risks identified above and the likelihood that the storm would "constitute a major disaster." (Dkt. 93-4 at 1–2.)

The day after Hurricane Ian made landfall in Florida, Defendant removed the plug from the emergency interconnect, and two days later, on October 1, 2022, Defendant opened the weir to divert lake waters. (Dkt. 91-1 ¶¶ 18–20.) Defendant did

- 3 -

not request authorization from the water management district to operate the interconnect until October 6, 2022, when the water management district sent Defendant an out-of-compliance letter. (*Id.* ¶ 21; Dkt. 97-11 at 2–3.) On October 13, 2022, Defendant received authorization to operate the interconnect for ninety days, and on December 6, 2022, this authorization was extended for another ninety days. (Dkt. 91-1 ¶¶ 21–24.) Defendant was subsequently authorized to allow the interconnect to remain open due to the continuing effects of Hurricane Ian as well as Hurricane Nicole, Tropical Storm Debby, and Hurricane Milton, which made landfall in Florida in November 2022, August 2024, and October 2024, respectively. (*Id.* ¶¶ 25–26.)

Defendant's deputy public works director, Phyllis Wallace, sat for a deposition in this case on August 11, 2025. (*See* Dkt. 97-8.) She testified that at that time, Defendant was "looking into" a project that "would be considered a[n] enhancement to" the current interconnect: the project would allow Defendant to pump water "to another location" as well as "to capture water . . . to augment reclaimed water." (*Id.* at 57–58.) Ms. Wallace clarified that the project was "[b]eing looked into," as opposed to being "currently underway," (*id.* at 57); in fact, she stated that the project had not yet "gotten to th[e] stage" of a "preliminary design," (*id.* at 59). When asked whether "water would essentially stop flowing south because it would be rerouted" if the project came to fruition, Ms. Wallace said no, and when asked whether the project would be an alternative to the interconnect during an emergency, she testified that the project would instead work "in combination with" the interconnect. (*Id.* at 58.) Ms.

Wallace testified that Defendant began considering the project "right around the impacts of Hurricane[s] Ian and Nicole" in late 2022. (*Id.* at 59.) A map depicting the proposed project site dated November 2023 appears in the record. (*See* Dkt. 97-12.)

Plaintiffs allege that Defendant committed unconstitutional takings when in response to Hurricane Ian and subsequent tropical systems, Defendant opened the interconnect and kept it open, thereby flooding Plaintiffs' homes. (Dkt. 27 ¶¶ 66–70, 74, 76–79, 82–84.) Plaintiffs accordingly bring inverse condemnation claims against Defendant under the United States and Florida Constitutions. (*Id.* ¶¶ 132–47.) In March 2023, Plaintiffs filed this case as a putative class action in Florida state court. (*See* Dkt. 1-1.) Defendant removed the case to this court in April 2023, (*see* Dkt. 1), and Plaintiffs filed an amended class action complaint in August 2023, (*see* Dkt. 27). However, Plaintiffs no longer assert class claims, as they withdrew their motion for class certification in May 2025. (*See* Dkt. 73.) Discovery in this case closed in August 2025. (Dkt. 75.) A bench trial on liability is set for the January 2026 trial term, with a jury trial on damages to follow as necessary. (Dkt. 104 at 2, 7.)

## APPLICABLE STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a party "assert[s] that a fact cannot be or is genuinely disputed," the party "must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . [by] showing that the materials cited do not establish the absence or presence of a genuine dispute[] or that an adverse party cannot

produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials" when resolving the motion. Fed. R. Civ. P. 56(c)(3); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a court may decide a motion for summary judgment without undertaking an independent search of the record." (quotation omitted)).

A factual dispute is "genuine" only if "a reasonable [factfinder] could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record showing a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that no evidence supports the non-moving party's case, the burden then shifts to the non-moving party to show that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see also HRCC*, 703 F. App'x at 816–17 ("Presenting arguments in opposition to a motion for summary

judgment is the responsibility of the non-moving party, not the court." (alteration adopted) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))). In determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences in the light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). The court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party." *Matsushita*, 475 U.S. at 587.

## ANALYSIS

Although Plaintiffs assert both federal and state takings claims, (Dkt. 27 ¶¶ 132–47), the court examines the claims together, as the "Takings Clause of the Florida Constitution is identical to that of the United States Constitution, and accordingly, the two can be analyzed coextensively," *Persaud Props. FL Invs., LLC v. Town of Fort Myers Beach*, 593 F. Supp. 3d 1129, 1137 (M.D. Fla. 2022) (citing *Highlands-In-The-Woods, LLC v. Polk County*, 217 So. 3d 1175, 1180 (Fla. Dist. Ct. App. 2017)). Defendant makes various arguments for summary judgment on the takings claims, including that Defendant is entitled to summary judgment based on a necessity defense. (Dkt. 93 at 17–25.) Because the court agrees with Defendant regarding this defense, the court does not address Defendant's other arguments.

A government entity may avoid liability for the destruction of "property, in

cases of actual necessity, . . . to forestall . . . grave threats to the lives and property of others." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1029 n.16 (1992) (quotation omitted); *see Baker v. City of McKinney*, 84 F.4th 378, 385 (5th Cir. 2023) ("[H]istorically oriented legal scholarship has widely converged on the thesis that a 'necessity' or 'emergency' privilege has existed in Takings Clause jurisprudence since the Founding."). To avoid liability under the necessity defense, Defendant must satisfy three elements: (1) an "actual emergency, [(2)] imminent danger, and [(3)] the actual necessity of the [challenged g]overnment action." *See TrinCo Inv. Co. v. United States*, 722 F.3d 1375, 1379 (Fed. Cir. 2013). Plaintiffs appear to contest only the third element, (*see* Dkt. 97 at 14–16), and in any event, undisputed evidence establishes the first and second elements. For example, Governor DeSantis issued executive orders describing Hurricane Ian as an actual emergency, (*see* Dkts. 93-3, 93-4), and the storm caused such widespread flooding, (*see* Dkts. 93-6, 93-7, 93-8), that Defendant ultimately received authorization to open the interconnect, (*see* Dkts. 93-5, 93-9, 93-10). This level of flooding indicates imminent danger. (*See* Dkt. 93-9 at 1 (noting the "unprecedented flooding conditions caused by Hurricane Ian's associated rainfall, which . . . caused severe roadway, yard[,] and structural flooding"); Dkt. 93-10 at 1 (observing that these flooding conditions were subsequently "exasperated by the rainfall from Hurricane Nicole").) *See Orr v. United States*, 166 Fed. Cl. 1, 75 (2023) (finding for the United States on takings claims pursuant to the necessity defense when "government officials and personnel" properly treated a "storm as an unpredictable emergency in an extreme weather situation").

- 8 -

As to the third element, Defendant contends that it needed to open the emergency interconnect to relieve the "imminent risk to life and property" resulting from the "significant, active flooding" caused by Hurricane Ian. (Dkt. 93 at 25.) Defendant further maintains that it "act[ed] to prevent public harm," not "to confer[] a public benefit." (*Id.*) *See Drake v. Walton County*, 6 So. 3d 717, 721 (Fla. Dist. Ct. App. 2009) ("A taking is more likely to have occurred when a governmental action confers a public benefit rather than prevents a public harm." (citing *Graham v. Estuary Props., Inc.*, 399 So. 2d 1374, 1381 (Fla. 1981))). In response, Plaintiffs argue that Defendant's failure to receive authorization before opening the interconnect—and Defendant's consequent receipt of out-of-compliance letters such as the October 6, 2022 letter—"suggest that [Defendant]'s conduct was not a lawful emergency response, but rather an unauthorized and reactionary measure taken without proper legal authority." (Dkt. 97 at 15.) Plaintiffs also assert that viable alternatives to opening the interconnect "were not only available but were actively being pursued," so opening the interconnect was not necessary. (*Id.*) To support this assertion, Plaintiffs cite two sources in the record: Ms. Wallace's deposition testimony about the project that would enhance the interconnect and the November 2023 map depicting the proposed project site. (*Id.* at 15–16; *see* Dkt. 97-8 at 56–58; Dkt. 97-12 at 1–2.)

Plaintiffs' response does not suffice to overcome summary judgment for two reasons. First, whether Defendant's action was "taken without proper legal authority," (*see* Dkt. 97 at 15), does not bear on the elements of the necessity defense, *see TrinCo*, 722 F.3d at 1379. Plaintiffs cite only *TrinCo* as legal authority for the

necessity defense's standards, (*see* Dkt. 97 at 14–16), and *TrinCo* does not suggest that official authorization (or the lack thereof) is an element of the defense, *see* 722 F.3d 1375. The court finds *TrinCo* persuasive in this regard. *See also Bonin v. Sabine River Auth. of Tex.*, No. 1:19-CV-00527, 2024 WL 6069413, at *8, 2024 U.S. Dist. LEXIS 246145, at *34 (E.D. Tex. Dec. 16, 2024) (stating the three elements of the necessity defense as (1) an actual emergency, (2) imminent danger, and (3) the actual necessity of the government action, without discussing whether the government action was officially authorized). Indeed, to the extent that Defendant's decision to open the interconnect without first requesting authorization does bear on the elements, it underscores the actual emergency and imminent danger necessitating a prompt government response. Second, the two sources cited by Plaintiffs do not support that Defendant had—or has—viable alternatives to opening the emergency interconnect. As Plaintiffs point out, (*see* Dkt. 97 at 15), the map depicting the proposed project site is dated November 2023—over a year after Hurricane Ian made landfall. (Dkt. 97-12 at 1–2.) Further, Ms. Wallace testified that as of her August 11, 2025 deposition, the project was merely "[b]eing looked into," as opposed to being "currently underway." (Dkt. 97-8 at 57.) No cited evidence supports that the project is a present alternative to the interconnect or that it was an alternative at any time between Hurricane Ian's landfall and now. Because undisputed evidence supports the elements of the necessity defense and because Plaintiffs do not put forward sufficient evidence to overcome the defense, *see* Fed. R. Civ. P. 56(c)(1), (3); *Crawford-El*, 523 U.S. at 600; *HRCC*, 703 F. App'x at 816–17, Defendant is entitled to summary judgment on all claims.

## CONCLUSION

Accordingly:

1. Defendant's motion for summary judgment (Dkt. 93) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment accordingly, to terminate any pending motions and deadlines, and to close this case.

**ORDERED** in Orlando, Florida, on December 2, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record